**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

Melvin Lamont Mix,         )
    Petitioner,        )
                        )
v.                      )        1:08cv268 (GBL/TCB)
                        )
Gene Johnson,         )
    Respondent.       )

<u>MEMORANDUM OPINION</u>

Melvin Lamont Mix, a Virginia inmate proceeding <u>pro se</u>, filed this petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction of second degree murder

and use of a firearm in the commission of a felony in the Circuit Court for the City of Norfolk,

Virginia. By Order dated May 9, 2008, respondent was directed to show cause within sixty days

why the writ should not be granted. On July 8, 2008, respondent filed a Rule 5 Answer, a

Motion to Dismiss the petition, a brief in support that Motion, and the notice required by

<u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K). Petitioner was

given the opportunity to file responsive materials, and he has filed a response. For the reasons

that follow, the petition must be dismissed.

**I. Background**

On April 25, 2003, Mix became involved in an altercation with another patron at Harry's

Bar and Grill in Norfolk. Mix and the other individual, David McNally, who was wearing a red

shirt, were ejected from the bar through different exits. Mix went to his car, retrieved a towel

from the trunk, and sat on the back of the car, nursing his wounds. At that time, another patron

named Brian Waters chose to leave the bar. Unfortunately for Waters, he also was wearing a red

shirt, and as Waters walked from the front door of the bar, Mix took a gun from the waistband of

his pants, concealed it beneath the towel, walked toward Waters, and shot Waters from a distance

of about four feet. Waters was pronounced dead a short time later.

As a result of this incident, Mix was charged with first degree murder and use of a

firearm in the commission of a felony. He was tried to a jury in the Circuit Court for the City of

Norfolk in April, 2004, and was convicted of second degree murder as a lesser included offense

of first degree murder, and of use of a firearm while committing a felony, as charged. Resp. Ex.

1. On August 6, 2004, Mix was sentenced to serve 43 years in prison, followed by a three-year

period of supervised release. Id.

Mix filed a petition for appeal in the Court of Appeals of Virginia, raising the following

claims:

> 1. The trial court erred in excluding evidence of the decedent's prior violent convictions to show the decedents's character for turbulence and violence.
>
> 2. The trial court erred during 'victim impact' testimony at the sentencing phase by precluding cross-examination of decedent's father about decedent's prior acts of violence against family members.
>
> Resp. Ex. 2

A single judge of the appellate court denied Mix's petition on February 23, 2005. A

three-judge panel again denied Mix's petition on May 24, 2005. Mix v. Commonwealth, R. No.

1783-04-1, slip op. (Va. Ct. App. May 24, 2005) ; Resp. Ex. 2. Mix sought review of that result

by the Supreme Court of Virginia, but his petition for appeal was refused on October 11, 2005.

Mix v. Commonwealth, R. No. 051299, slip op. (Va. Oct. 11, 2005); Resp. Ex. 3.

On August 4, 2006, Mix filed a petition for a state writ of habeas corpus in the Circuit

Court for the City of Norfolk, making the following allegations:

1.  The trial court erred by:

    a. excluding evidence of the victim's prior
    convictions of violent crimes, which were offered to
    show his character for turbulence and violence, and

    b. failing to instruct the jury on voluntary
    manslaughter and self-defense.

2.  His attorney rendered ineffective assistance by failing to
    investigate or prepare a defense for trial, in that she failed
    to:

    a. investigate and interview Stacy Johnson;

    b. object to the admission of Johnson's prior inconsistent
    statement to the police;

    c. interview witnesses or obtain their police
    statements;

    d. object to the testimony of Shannon Eggers; and

    e. rebut the testimony of Matthew Skipper.

3.  His attorney was ineffective because she failed to:

    a. interview or investigate employees of the
    nightclub where the murder occurred;

    b. have the preliminary hearing transcribed;

    c. obtain police statements; and

    d. prepare for trial, such that she was unable to
    establish the bias of the prosecution's witnesses.

4.  The trial court erred by allowing Shannon Eggers, who
    attempted to resuscitate the wounded victim, to testify at
    sentencing.

5.  His attorney was ineffective for failing to have his

3

confession suppressed and to raise a suppression issue on
appeal.

6.    His attorney was ineffective for failing to obtain character
witnesses.

7.    The officers who arrested and questioned him violated his
rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

8.    His attorney was ineffective for failing to subpoena the
owner and employees of the nightclub.

9.    His attorney was ineffective for failing to present a defense
of temporary insanity.

10.    His attorney was ineffective for advising him not to testify
in his own defense.

11.    The evidence was insufficient to sustain his conviction of
second degree murder.

12.    The trial court erred in denying him the opportunity to
cross-examine the victim's father regarding the victim's
prior convictions.

Resp. Ex. 4

On March 21, 2007, the court denied all relief. <u>Mix v. Johnson</u>, case no. CL06-4116;

Resp. Ex. 4. Specifically, it held that petitioner's claims 1(b), (4), (7) and (11) were defaulted

pursuant to <u>Slayton v. Parrigan</u>, 215 Va. 27, 30, 205 S.E. 2d 680, 682 (1974)(holding that claims

that could have been but were not raised at trial and on appeal are not cognizable in state habeas

corpus proceeding), and that claims (1)(a) and (12) were precluded from consideration by <u>Henry</u>

<u>v. Warden</u>, 265 Va. 246, 248-49, 576 S.E. 2d 495, 496 (2003)(non-jurisdictional issue raised and

decided at trial or on direct appeal will not be considered in habeas corpus proceeding).  The

court further determined that Mix's remaining claims, all of which alleged instances of

ineffective assistance of counsel, were without merit. Mix sought review of that decision by the

Supreme Court of Virginia, but his petition for appeal was refused. <u>Mix v. Johnson</u>, R. No. 071500, slip op. (Va. Dec 13, 2007); Resp. Ex. 5.

This federal proceeding for a writ of habeas corpus pursuant to § 2254 ensued on March 3, 2008,[1] with Mix making the following claims:

> A.  The Virginia Supreme Court erred in finding claims (1)(b), (4), (7) and (11) were not cognizable pursuant to <u>Slayton v. Parrigan</u>.

> B.  The Virginia Supreme Court erred in finding claims (1)(a) and (12) were not cognizable pursuant to <u>Henry v. Warden</u>.

> C.  The Virginia Supreme Court erred in finding:

>> 1.  his attorney was not ineffective failing to investigate or prepare a defense in that she failed to:

>>> a. investigate and interview Stacy Johnson;

>>> b. object to the admission of Johnson's prior inconsistent statement to the police;

>>> c. interview witnesses; and

>>> d. object to the testimony of Shannon Eggers; and

>> 2.  his attorney was not ineffective for failing to:

>>> a. rebut the testimony of Matthew Skipper;

>>> b. interview or investigate employees of the nightclub where the murder occurred;

>>> c. have the preliminary hearing transcribed;

---

[1]A pleading submitted by a <u>pro</u> <u>se</u> prisoner is deemed filed when it is delivered to prison officials for mailing. <u>Houston v. Lack</u>, 487 U.S. 266 (1988); <u>Lewis v. City of Richmond Police Dep't</u>, 947 F.2d 733 (4th Cir. 1991).

d. prepare for trial, such that the bias of the
prosecution's witnesses was not established;

e. have his confession suppressed;

f. obtain character witnesses on his behalf;

g. interview or investigate employees of the
nightclub where the murder occurred;

h. present a defense of temporary
insanity; and

I. advise him not to testify in his own defense.

### III. Exhaustion and Procedural Default

The respondent rightfully does not challenge any of petitioner's claims as unexhausted.

Before bringing a federal habeas petition, state prisoners must first exhaust their claims in the

appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v.

Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the

exhaustion requirement, a state prisoner "must give the state courts one full opportunity to

resolve any constitutional issues by invoking one complete round of the State's established

appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner

must present the same factual and legal claims raised in the instant case to the Supreme Court of

Virginia on direct appeal, or in a state habeas corpus petition. Duncan v. Henry, 513 U.S. 364

(1995). Mix has fulfilled this requirement as to each of his present claims.

However, where a claim has been rejected by a state court on the basis of its procedural

default, the claim is likewise procedurally barred from federal review. A state court's finding of

procedural default is entitled to a presumption of correctness, Clanton v. Muncy, 845 F.2d 1238,

1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), provided two foundational requirements are

met. Harris v. Reed, 489 U.S. 255, 262-63 (1989).  First, the state court must explicitly rely on the procedural ground to deny petitioner relief.  Id.  Second, the state procedural rule furnished to default petitioner's claim must be an independent and adequate state ground for denying relief.  Id. at 260;  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).  When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence.  Harris, 489 U.S. at 260.

### IV. Non-Cognizable Claims

In claim A of this federal petition, Mix argues that the Virginia Supreme Court erred in finding certain of the claims he raised in his state habeas corpus application were not cognizable in that proceeding pursuant to Slayton v. Parrigan, 215 Va. 27, 30, 205 S.E. 2d 680, 682 (1974), which holds that a Virginia prisoner may not raise for the first time in a habeas corpus petition a claim that could have been but was not raised at trial or on direct appeal. In claim B, Mix contends that the Virginia Supreme Court erred in concluding that two additional claims were not cognizable on state habeas corpus review where the same arguments had been presented unsuccessfully on direct appeal.   As the respondent argues correctly, these two arguments are not cognizable predicates for federal habeas corpus relief. A federal writ of habeas corpus may issue only where a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a): Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998). Mix in claims A and B alleges only that a state court incorrectly applied state law in the state habeas corpus process; he does not challenge the constitutionality of his convictions in either instance. Therefore, claims A and B are not cognizable in this federal proceeding. See Lawrence

7

v. Branker, 517 F.3d 700, 717 (4th Cir. 2008)(holding claims relating only to state court's adjudication of state postconviction motion were not cognizable in § 2254); Wright, 151 F.3d at 159 (holding that claims challenging "Virginia's state habeas corpus proceedings, cannot provide a basis for federal habeas corpus relief").

Moreover, even if claims A and B were liberally construed in the light of petitioner's pro se status as challenges to the procedural bar that is applicable in this federal proceeding to the underlying claims the Virginia Supreme Court expressly found to be in procedural default, Clanton, 845 F.2d at 1241, Mix still would be entitled to no relief. In his Objection to [Respondent's] Motion to Dismiss (Docket # 12), Mix makes no attempt to show cause and prejudice or a fundamental miscarriage of justice, such as actual innocence, as to any of the defaulted underlying claims. Cf. Harris, 489 U.S. at 260. Therefore, claims A and B of this petition will be dismissed without further consideration.[2]

## IV. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on

---

[2]To the extent that Mix might argue that claims 1(a) and 12 of his state habeas petition could be construed as having been exhausted on direct appeal and therefore not procedurally defaulted, he still would be entitled to no relief. Both of those claims alleged only errors in state evidentiary rulings, and absent circumstances not present here, questions regarding the admissibility of evidence under state law present no federal question and hence cannot support habeas corpus relief. Barbe v. McBride, 521 F.3d 443 (4th Cir. 2008); Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 1993).

an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### V. Analysis

In all of his federally-cognizable claims, Mix argues that he received ineffective assistance of trial counsel for various reasons. To succeed on his claims, Mix must show that the Supreme Court of Virginia's adjudication was contrary to, or an unreasonable application of the Supreme Court's decision in Strickland v. Washington, or was based on an unreasonable determination of the facts. 466 U.S. 668 (1984); see 28 U.S.C. § 2254(d). To establish ineffective assistance of counsel, Mix must show that (1) "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the range of professionally competent assistance," Strickland, 466 U.S. at 690 (defining ineffective assistance of counsel as falling

9

below an objective standard of reasonableness and applying a strong presumption of competence

and deference to attorney judgment), and (2) "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at

694. The two prongs of the Strickland test are "separate and distinct elements of an ineffective

assistance claim" and a successful petition "must show both deficient performance and

prejudice." Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994). Moreover, a court does not

need to review the reasonableness of counsel's performance if petitioner fails to show prejudice.

Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir. 1998).

With respect to the first prong of the Strickland test, "[j]udicial scrutiny of counsel's

performance must be highly deferential," Strickland, 466 U.S. at 689, and a court must "presume

that challenged acts are likely the result of sound trial strategy." Spencer, 18 F.3d at 233. With

respect to the second prong of the Strickland test, "a reasonable probability is a probability

sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In order to

undermine confidence in the case outcome, petitioner must show more than a remote possibility

that the results of the trial would have been different. Washington v. Murray, 4 F.3d 1285, 1290

(4th Cir. 1993).

In claim (C)(1)(a), Mix argues that his attorney provided ineffective assistance by failing

to investigate and to interview Stacy Johnson. In denying relief on this claim, the trial court

found that "[a] petitioner who complains his attorney failed to investigate must make a

'comprehensive showing' establishing 'what information would have been obtained' and how it

'would have produced a different result.' United States ex rel. Cross v. DeRobertis, 811 F.2d

1008, 1016 (7th Cir. 1987). The Court finds that Mix fails to state what such investigation of his

10

own witness would have revealed or how it could have altered the outcome of his case, and thus has shown neither deficient performance nor prejudice. Strickland, 466 U.S. at 693; see also Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)." Resp. Ex. 4, Final Order at 2-3. Since the Supreme Court of Virginia refused Mix's petition for review of the trial court's order without explanation, it is appropriate for this Court to infer that the Supreme Court of Virginia's ruling was based on the same reasoning as that of the circuit court. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The record reveals that Stacy Johnson, who was with Mix in Harry's Bar on the night of the shooting, in fact did testify for the defense at trial. Johnson told the jury that David McNally was the aggressor in the fight with Mix, in that McNally pushed and then punched Mix without provocation. She also testified that McNally was joined in the assault by another man who also was dressed in a red shirt, who later was identified as the decedent, Brian Waters. Johnson stated that Waters kicked Mix in the head and called him a racially pejorative name, and Johnson identified both McNally and Waters to the bar's bouncer. Tr. 302-06. Johnson helped Mix to his car after the fight, and stated that Mix was bleeding profusely and "looked so confused ... so scared. He didn't even know what happened." Tr. 306.   Under these circumstances, where Johnson testified in a manner which was favorable to Mix, the state courts' rejection of Mix's argument in claim (C)(1)(a) that counsel rendered ineffective assistance by failing to investigate this witness further was neither contrary to nor an unreasonable application of applicable federal law, so habeas corpus relief is not warranted on that basis. Williams, 529 U.S. at 412-13.

In claim (C)(1)(b), Mix accuses his attorney of providing ineffective assistance by failing to object to the admission of a prior inconsistent statement Stacy Johnson gave to the police. The

11

statement was used to impeach Johnson at trial, and Mix faults his counsel for not arguing that the statement was coerced and altered by the police. The trial court found this argument to be without merit, on the ground that "Mix has failed to identify with specificity any portion of Johnson's prior statement that was allegedly changed by police. The Court notes further that Mix does not explain how he was prejudiced by the admission of Johnson's prior statement. The Court also holds that the prior inconsistent statement was properly admitted to impeach Johnson and notes that the jury rejected Johnson's claim that the statement had been coerced. Mix has not shown that his attorney was deficient for failing to make a futile suppression motion. See Correll v. Commonwealth, 232 Va. 454, 470, 352 S.E. 2d 352, 361 (1987)." Resp. Ex. 4, Final Order at 3.

The state court's conclusion that witness Johnson's prior inconsistent statement was properly admitted was correct under Virginia law. See Smith v. Commonwealth, 15 Va. App. 507, 511, 425 S.E. 2d 95, 96 (1992)("If a witness gives testimony that is inconsistent with a prior statement, or testifies that he does not recall making the prior statement, a sufficient foundation for impeachment has been laid, and opposing counsel may cross-examine the witness as to any inconsistency.") Thus, any objection to its admission by Mix's counsel would have been futile, and it is well established that an attorney has no duty to make meritless arguments or objections. Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005)(citing Murray v. Maggio, 736 F. 2d 279, 283 (5th Cir. 1984). Since it is apparent that Mix suffered no prejudice when his attorney failed to object to the admission of the witness' prior inconsistent statement, the state courts' conclusion that Mix's claim satisfied neither prong of the Strickland analysis, see Resp. Ex. 4, Final Order at 2, was both factually reasonable and in accord with that controlling federal authority, and relief

on claim (C)(1)(b) must denied.

In claim (C)(1)(c), Mix contends that his lawyer provided ineffective assistance by failing

to interview Benjamin Davis, Katherine Pasquale, Matthew Skipper, Shannon Eggers, and David

McNally. However, as the state court found in rejecting this contention, "Mix fails to explain

what information these interviews would have yielded. See Bassette, 915 F.2d at 940-41

(petitioner must allege 'what abn adequate investigation would have revealed.') Moreover Mix

fails to explain how such interviews could have altered the outcome of his case. DeRobertis, 811

F.2d 1008, 1016; Strickland, 466 U.S. at 693." Resp. Ex. 4, Final Order at 4. Because the state

court's holding was in accord with the Strickland precept that a claim of ineffective assistance

must fail unless the petitioner makes an affirmative showing of prejudice, that determination is

entitled to deference, and Mix's federal claim will be dismissed.

In claim (C)(1)(d), Mix asserts that his attorney rendered ineffective assistance when she

failed to object to the testimony of Shannon Eggers. Eggers testified during the sentencing phase

of Mix's trial, and Mix complains that she also should have been made to testify during the guilt

phase to contradict the testimony of Katherine Pasquale. The state court denied relief on this

claim on the holding that Mix failed to state the grounds upon which he believed counsel should

have objected to Eggers' testimony, and the court upon an independent review of the record

found no obvious basis for an objection. Further, to the extent that Mix complained that the

testimony of the two witnesses was inconsistent, their credibility was for the jury to decide. Thus,

the court concluded that Mix had shown neither deficient performance nor prejudice. Resp. Ex.

4, Final Order at 4.

Review of the record confirms that the state court's interpretation of the facts was

13

reasonable. As the state court observed, Mix has never explained why he believes that Eggers'

testimony would have contradicted that of Pasquale, and the transcript reveals that Eggers did not

witness the shooting, while Pasquale did. Tr. 4/19/04 at 75. In fact, when the shooting occurred,

Eggers was still inside the bar, and her testimony related almost entirely to the aftermath of the

gunshot, and in particular her attempts to resuscitate the victim. Tr. 4/22/04 at 19-26. The sole

mention Eggers made in her testimony of the fight itself was the statement that Pasquale wanted

to leave because of it. Id. at 19. Under these circumstances, it is apparent that Eggers could not

have provided any relevant admissible evidence during the guilt phase of the trial, so counsel's

failure to call her as a witness at that proceeding satisfies neither prong of the Strickland test. To

the extent that Mix argues that counsel should have impeached Eggers's testimony regarding her

resuscitation efforts with the testimony of Stacy Johnson and Benjamin Davis, his claim also

lacks merit. Johnson testified that she and Mix fled the scene immediately after the shooting, Tr.

308-09, 315-16, so she would have had no way to know whether Eggers attempted to resuscitate

the victim. Davis offered no testimony at all as to who attempted to aid the stricken Waters or

even if any aid was administered, so clearly he offered nothing with which Eggers potentially

could have been impeached. Consequently, the state courts' denial of relief on this claim was in

accord with applicable federal principles, see Strickland, and the claim likewise will be

dismissed here.

In claim (C)(2), Mix again charges his attorney with providing ineffective assistance on

several bases. In claim (C)(2)(a), Mix argues that counsel was ineffective in failing to rebut the

testimony of Matthew Skipper, who told the jury that he saw Mix go into the trunk of his car to

get the gun. The state court determined that this argument was without merit, both because the

14

jury heard testimony from other witnesses that Mix had the gun with him the entire evening and got only a towel from the trunk, Tr. 262-64, 306, 315, 327-30, and because the evidence would have gone to show a lack of premeditation but the jury nonetheless acquitted Mix of first degree murder. Resp. Ex. 4, Final Order at 4-5. Because that holding was factually reasonable and in accord with the principles of Strickland, it will not be disturbed.

In claim (C)(2)(b), Mix faults his attorney for failing to interview or to investigate unidentified employees of the nightclub where the murder occurred. However, as the state court held, Mix's "failure to suggest grounds for investigating unidentified witnesses or to proffer their testimony compels the conclusion that he has failed to establish either deficient performance or prejudice. Strickland, 466 U.S. at 693; see also Bassette, 915 F.2d at 940-41." Resp. Ex. 4, Final Order at 5. Therefore, federal relief also will be denied.

In claim (C)(2)(c), Mix alleges that his counsel rendered ineffective assistance by failing to  have the preliminary hearing recorded and transcribed, and argues that had counsel done so, the transcript could have been used for impeachment purposes at trial. However, here, just as the state court observed, "Mix fails to identify a single inconsistency between the testimony of any witness at trial and the testimony of that witness at the preliminary hearing, and this Court will not speculate as to possible prejudice." Resp. Ex. 4, Final Order at 5. Therefore, just as the state court held, Mix fails to establish either deficient performance by counsel or resulting prejudice, so his burden under Strickland is not met, and his claim warrants no relief.

In claim (C)(2)(d), Mix contends that he was provided with ineffective assistance when his counsel failed to prepare for trial, such that the bias of the prosecution's witnesses was not established. The state court found this argument to be without merit, because "[o]ther than the

15

relationships between the witnesses, the victim, and the defendant that were established at trial, Mix fails to identify any bias that such an investigation would have revealed. Indeed his bare allegation that his attorney did not prepare is not credible in light of the trial record. Witness testimony is frequently fraught with inconsistencies and it is the province of the jury to sort through the testimony and determine the true facts of the case. The Court finds petitioner fails to prove either deficient performance or prejudice under Strickland." Resp. Ex. 4, Final Order at 5-6.

Review of the trial record demonstrates the accuracy of the state court's observation that counsel in her trial preparation did not overlook any significant relationships between witnesses, such that bias might be inferred. Prosecution witness Pasquale was a friend of David McNally's, but she did not know either the decedent or Mix. Tr. 77, 99-100, 105. In addition, prosecution witness Matthew Skipper knew the decedent but did not know McNally. Tr. 109-11, 125. Witness Benjamin Davis did not know either Mix or the victim, and in fact testified that he had "never seen any of these people before." Tr. 282-83. Mix's assertion in his state habeas application that counsel through more thorough preparation could have resolved all conflicts between the testimony of the numerous witnesses is specious. Under these circumstances, Mix has failed to demonstrate "what an adequate investigation [by his counsel] would have revealed," cf. Bassette, 915 F.2d at 940-41, so his claim of ineffective assistance must fail.

In claim (C)(2)(e), Mix asserts that his attorney was ineffective for failing to have his confession suppressed on the ground that it was altered by the police. The record demonstrates that counsel did move to suppress the confession, albeit on the ground that it was given in violation of Mix's Miranda rights after he had invoked his right to counsel. Tr. 11/10/03. The

trial court denied the motion on the holding that Mix reinitiated the conversation. Id. at 58-59.

The confession was not admitted during the guilt phase of Mix's trial, but was used solely for

impeachment when he elected to testify during the sentencing phase. Tr. 4/22/04 at 36-40. As the

state court found in denying relief on this claim, "even had there been a Miranda/Edwards

violation, the admission of Mix's statement for impeachment purposes would still have been

constitutionally permissible. Harris v. New York, 401 U.S. 222, 226 (1971)." Resp. Ex. 4, Final

Order at 6. Moreover, as the state court also recognized, Mix's contention that the police

fabricated part of the statement went only to its weight, not to its admissibility, and plainly was

rejected by the jury. See Williams v. Commonwealth, 11 Va. App. 149, 153, 396 S.E. 2d 860,

862 (1990)(admissibility of confession is question for the court, but once confession it admitted,

its weight is for the jury to decide). Here, then, the state court's determination that Mix fails to

establish either deficient performance by counsel or prejudice as required by Strickland was

reasonable, and federal relief likewise will be denied.

In claim (C)(2)(f), Mix faults his counsel for her failure to obtain and present character

witnesses other than Mix's mother at trial. However, Mix argues only in general terms that

unnamed emergency medical workers, employers, hospital staff and neighbors could have been

called; he identifies not one specific individual who would have been willing to testify on his

behalf, nor does he provide any detail as to the content of the testimony they supposedly would

have offered. It is well settled under federal law that "an allegation of inadequate investigation

does not warrant habeas relief absent a proffer of what favorable evidence or testimony would

have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996); see also

Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994)("[W]ithout a specific, affirmative

17

showing of what the missing testimony would have been, 'a habeas court cannot even begin to apply Strickland's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'")(quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)). The state court's rejection of Mix's argument that counsel rendered ineffective assistance in this regard was in accord with these applicable federal authorities, so that result will not be disturbed. Williams, 529 U.S. at 412-13.

In claim (C)(2)(g), Mix challenges his counsel's representation on the ground that she failed to interview or to investigate the owner and employees of the nightclub where the murder occurred. Again, however, Mix fails to identify those individuals or to proffer the substance of their testimony. Therefore, for the reasons just discussed, the state court's finding that this claim lacked merit was in accord with Strickland. Moreover, it is well settled that the choice of which witnesses will be called to testify generally is a matter of trial strategy, and such tactical decisions rarely support habeas corpus relief. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977); see also United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)(decision whether to call witnesses afforded "enormous deference"). Therefore, federal relief on this claim likewise will be denied.

In claim (C)(2)(h), Mix argues that his attorney rendered constitutionally deficient representation by failing to present a defense of temporary insanity. The state court rejected this argument, noting that "[p]etitioner alleges no mental disease or defect, but argues that his intemperate reaction to the victim's racial slurs would have supported such a defense. Counsel wisely refrained from attempting to base an insanity defense upon petitioner's reaction to mere

'fighting words.'" Resp. Ex. 4, Final Order at 7-8. The court's observation was in keeping with

Virginia law, which holds that "mere passion" or "overwhelming emotion not growing out of,

and connected with, a disease of the mind" does not amount to legal insanity. Thompson v.

Commonwealth, 193 Va. 704, 717, 70 S.E. 2d 284, 291-92 (1952). Thus, "[f]renzy arising solely

from the passion of anger and jealousy, regardless of how furious, is not insanity." Id. Since the

defense Mix now suggests would have been meritless, counsel did not perform ineffectively by

failing to raise it, Moody, 408 F.3d at 151, and relief on this claim will be denied.

In claim (C)(2)(i), Mix asserts that counsel provided him with constitutionally deficient

assistance by advising him not to testify in his own defense.  The state court rejected this

contention for two reasons. First, it held that Mix was bound by his representation to the court

during the trial that after considering counsel's advice, he personally had decided not to testify.

Anderson v. Warden, 222 Va. 511, 516, 281 S.E. 2d 885, 888 (1981).   Second, the court

determined that counsel's advice to Mix not to testify was a matter of sound tactical judgment,

which was informed by consideration of the possibility that the Commonwealth would use Mix's

statement to the police for impeachment purposes, which in fact was what occurred when he

testified at the sentencing hearing.  Thus, the court concluded that Mix had failed to establish

either deficient performance or prejudice. Resp. Ex. 4, Final Order at 8.

Examination of the record demonstrates the soundness of the state court's conclusion.

The trial court conducted a thorough colloquy with Mix regarding the issue of whether he would

testify, and Mix confirmed that he personally had chosen not to do so after weighing counsel's

advice. Tr. 358-59. Mix agreed that he had discussed the pros and cons of testifying with his

attorney, including the consideration that he could be impeached with the statement he gave to

19

the police if it was inconsistent with his testimony at trial. Id. Like Virginia, federal law holds

that a petitioner may not later controvert statements such as these that were made under oath at a

colloquy. Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001); Jones v. Taylor, 547 F.2d 808,

810 (4th Cir. 1977). In addition, it is apparent on this record that counsel's advice to petitioner

not to take the stand was a sound tactical choice. Mix by testifying would have opened himself

to impeachment with his prior confession to the police, and the jury would have heard Mix's

admissions that the victim did not approach him outside the bar, but instead he approached the

victim, and that he knew as soon as the victim fell that he had shot the wrong man. Tr. 11/10/04

at 28-30. Counsel's strategic advice in this regard will not support a claim of ineffective

assistance, Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983), and habeas corpus relief is

not warranted on this claim. Cf. Strickland.

Lastly, it is noted that, while not set out as a separate claim, Mix argues that he is entitled

to habeas corpus relief on the basis of "the cumulative impact of the deficiencies in the attorney's

performance." Am. Pet. at 14.[3] While it is true that trial errors which individually would be

considered harmless might cumulatively require reversal of a conviction, United States v. Parker,

997 F.2d 219, 221 (6th Cir. 1993), "the accumulation of non-errors cannot collectively amount to

a violation of due process." United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990);

accord, United States v. Lumpkin, 192 F.3d 280, 290 (2d Cir. 1999).   Here, since none of Mix's

alleged instances of ineffective assistance deprived him of a fair trial, that is, "a trial whose

---

[3]It is unclear whether this argument was exhausted in Mix's state court proceedings. However, as the claim is facially without merit, the AEDPA revisions allow the Court within its discretion to dismiss it on the merits. 28 U.S.C. § 2254 (b)(2); Swisher v. True, 325 F.3d 225, 232-33 (4th Cir.), cert. denied, 539 U.S. 971 (2003).

result is reliable," cf. Strickland, 466 U.S. at 687, the cumulative effect of those non-errors

likewise warrants no habeas corpus relief. Campbell v. United States, 364 F.3d 727 (6th Cir.

2004), cert. denied, 543 U.S. 119 (2005).[4]

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss the instant petition for a writ

of habeas corpus must be granted, and the instant petition will be dismissed with prejudice. An

appropriate Order shall issue.

Entered this _6th_ day of _March_ 2009.


Alexandria, Virginia                          _____/s/_____
                                              Gerald Bruce Lee
                                              United States District Judge

---

[4]It is noted that Mix asserts in his Objection to Motion to Dismiss that an evidentiary hearing
is necessary in this case. However, as is now apparent, Mix's claims can be thoroughly addressed
on the existing record, and because Mix is not otherwise entitled to evidentiary development of his
claims, an evidentiary hearing will be denied. Conaway v. Polk, 453 F.3d 567, 582 (4th Cir. 2006).

21